UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DENNIS F. BRENAY, SR. and
LINDA BRENAY,

                    Plaintiffs,                        Case No. 15-cv-13213

v.                                         Honorable Thomas L. Ludington

MICHAEL SCHARTOW, et al,

                    Defendants.

_____/

**ORDER DENYING MOTION FOR RECONSIDERATION**

Plaintiffs Dennis F. Brenay, Sr., and Linda Brenay brought suit against Defendants Michael Schartow, Kyle Glocksine, Troy Sierras, City of Essexville, and Bay City on September 10, 2015. Compl., ECF No. 1. Plaintiffs alleged two claims in the Complaint. The first, brought pursuant to 42 U.S.C. § 1983 against the individual officers, alleges that Defendants unlawfully entered Plaintiffs' home, used excessive force, and caused Brenay, Sr., to be arrested without probable cause. *Id.* at 14–15. The second, brought against the City of Essexville and Bay City pursuant to § 1983, alleges a policy and practice of inadequate training and supervision. *Id.* at 15–17. Plaintiffs contend that the officer Defendants violated their constitutional rights when attempting to arrest their son, Dennis Brenay, Jr., for a personal protective order violation. On September 6, 2016, the parties submitted a stipulated proposed order for the dismissal of Defendant Kyle Glocksine. ECF No. 29. At the close of discovery, the remaining Defendants filed motions for summary judgment. ECF Nos. 31, 32. On October 17, 2016, the parties submitted stipulated proposed orders for the dismissal of Defendants City of Essexville and Bay City. ECF Nos. 35, 36. On November 30, 2016, the Court granted summary judgment for

Defendants. In the order, the Court explained that Defendants were entitled to qualified immunity because their actions were not clearly unlawful when they occurred. On December 14, 2016, Plaintiffs filed a motion for reconsideration.

## I.

Pursuant to Eastern District of Michigan Local Rule 7.1(h), a party can file a motion for reconsideration of a previous order, but must do so within fourteen days. A motion for reconsideration will be granted if the moving party shows: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Michigan Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich. 1997). "[T]he Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3). *See also* Bowens v. Terris, No. 2:15-CV-10203, 2015 WL 3441531, at *1 (E.D. Mich. May 28, 2015).

## II.

In their motion for reconsideration, Plaintiffs make only one argument that was not previously considered by the Court. Specifically, Plaintiffs argue that under clearly settled law it was unlawful for the officers to reach through the doorway and grab Brenay, Jr, by the wrist after informing him he was under arrest. In the Court's order granting summary judgment, the Court concluded that the illegality of the officer's conduct was not beyond dispute, meaning that they were protected by qualified immunity. The following sections of that order relevant here are:

> In *United States v. Santana*, the suspect was "standing in the doorway of the house." 427 U.S. 38, 39 (1976). As the officers approached, Santana "retreated

into the vestibule of her house." *Id.* The officers followed through the open door and arrested Santana. *Id.* The Court explained that "'[w]hat a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection.'" *Id.* at 42 (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). The Court further concluded that Santana was "not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id.* Thus, the Court held that the warrantless arrest was not unconstitutional, even though Santana retreated into her home, because the arrest had begun in a public place. *Id.* at 43.

. . .

Plaintiffs are correct that the Supreme Court has drawn a firm line at the entrance of the house, see *Payton [v. New York]*, 445 U.S. [573] at 590 [1980], but *Santana* demonstrates that a person standing in the doorway of the home cannot necessarily reclaim Fourth Amendment protection by simply retreating into his or her home. In *Santana*, the Court emphasized that the suspect was "exposed to public view, speech, hearing, and touch." 427 U.S. at 42. While the Michigan Circuit Court and Court of Appeals concluded that Brenay, Jr., "never placed himself in a public place," the testimony of all parties clearly establishes that Brenay, Jr., was standing close enough for the officers to publically view him, hear him, and touch him. *See People v. Brenay*, No. 323284, 2015 WL 8984161 at *3 (Mich. Ct. App. Dec. 15, 2015); Brenay, Sr., Dep. at 159–164; Linda Brenay Dep. at 149–150; Brenay, Jr., Dep. at 74–75. That is, Brenay, Jr., was standing close enough for an officer to reach inside the doorway and grab his wrist without actually entering the house. Moreover, Brenay, Jr., has testified that he understood that he was being arrested before the door began to shut and Sierras grabbed his wrist. Brenay, Jr., Dep. at 75–77. Under these circumstances, a reasonable officer could have believed that Brenay, Jr., had exposed himself to public view, hearing, and touch, as explained by the *Santana* Court. Further, the closing door and the resistance by Brenay, Jr., after Sierras grabbed his wrist could be interpreted by a reasonable officer as an attempt by the suspect to escape further into the house after an arrest had been set in motion.

Importantly, when examining the question of the Defendants' entitlement to qualified immunity, the question for the Court is not whether the officers' conduct was actually unconstitutional. Rather, Defendants are entitled to qualified immunity if it is not "beyond debate" that their actions violated clearly established law. *Ashcroft v. al-Kidd*, 563 U.S. at 741. Given Brenay, Jr.'s, proximity to the door, the question of whether he placed himself in public view is not beyond debate. Because not "every reasonable official'" would have understood that the arrest was unlawful at the time it occurred, the arrest did not violate a clearly established right. *Reichle*, 132 S. Ct. at 2093. Accordingly, Defendants are entitled to qualified immunity on Plaintiffs' unlawful entry claim.

Op. & Order at 9, 12–13, ECF No. 49.

Plaintiffs cite for the first time, *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005). In *Cummings*, officers came to a house looking for a suspect involving an alleged domestic disturbance. *Id.* at 679. One officer opened the outside screen door and "knocked on the inside entry door." *Id.* Cummings, who was not the suspect, came to a window and asked the officers what they wanted. *Id.* The officers directed Cummings to come to the door. *Id.* Cummings partially opened the inside entry door and spoke briefly with the officers. *Id.* During the conversation, one of the officers placed his foot inside the doorway. *Id.* The officers asked if the suspect was inside the home. *Id.* Cummings told the officers that he was not and denied their requests to enter the home. *Id.* At this point, one officer asked Cummings about the smell of marijuana emanating from the home. *Id.* In response, Cummings attempted to close the front door but was unable to because one officer still had his foot blocking the door's path. *Id.* The officers then pushed the door open, entered Cummings's home, and arrested him. *Id.*

The Sixth Circuit held that the officers were not entitled to qualified immunity because clearly established law made their entry unlawful. The Sixth Circuit first rejected the Defendants' argument that, because Cummings shut the door on the officer's foot, there was probable cause to believe he had committed the crime of assault and they could enter the home in hot pursuit. *Id.* at 685–86. The Sixth Circuit explained that "it is highly questionable whether Cummings' act of closing the door on [the officer's] foot actually constituted an assault." *Id.* at 686. For that reason, the hot pursuit of a fleeing felon exception to the warrant requirement did not apply.

The Sixth Circuit also distinguished the facts in *Cummings* with those in *Santana*:

> In *Santana*, the Supreme Court upheld the effectuation of a warrantless arrest of the defendant inside her home, because the police initiated the arrest while she was standing in the open doorway of her house, and she retreated inside before the police could apprehend her. . . . [I]n contrast to Santana, Cummings never

- 4 -

fully exposed himself to the public view, given that he only opened the door very slightly, and only at the request of the police. Additionally, unlike the situation in *Santana*, Sherman and Vaughn did not attempt to arrest Cummings until after he tried to shut the door, at which point he clearly indicated that he did not wish to be exposed to the public.

*Id.*

The facts in the present case are more analogous to the facts in *Santana* than those of *Cummings*. In *Cummings*, the plaintiff opened only the inner entry door "very slightly." However, the Brenays opened both the inner steel door and outer storm door fully, thus exposing themselves entirely to public view. Additionally, the officers came to the Brenay home to arrest Brenay, Jr., for a personal protective order violation. Unlike in *Cummings*, there is no reason to question whether the plaintiff was the target of the offense. Iimportantly, Brenay, Jr., testified that he understood he was being arrested before the door began to shut and before Sierras grabbed his wrist. Brenay, Jr., Dep. at 75–77. In *Cummings*, the officers did not inform the plaintiff he was under arrest before they attempted to enter the home. In fact, the conduct they arrested him for, the alleged assault, occurred after and *because of* the officer's illegal entry (putting his foot inside the doorway). Here, in contrast, the officers did not cross the threshold of the home until after Brenay, Jr., was informed that he was under arrest and actions had been taken which suggested that Brenay, Jr., was attempting to evade arrest. The facts in the present case are more similar to that in *Santana*. In both cases, the plaintiffs opened the doors fully (thus exposing themselves to public view) and the officers initiated the arrest before the plaintiffs attempted to shut the door or end the encounter.

Once again, the inquiry here is not whether the officer's entry was lawful. That is a close question about which reasonable individuals could disagree. The Supreme Court has clearly indicated that the home is uniquely protected from warrantless searches and seizures. But, as stated in the original order, the question is not whether the officers' conduct was actually

unconstitutional. Rather, Defendants are entitled to qualified immunity if it is not "beyond debate" that their actions violated clearly established law. *Ashcroft v. al-Kidd*, 563 U.S. at 741. The very fact that reasonable individuals might disagree about whether the present case is more like *Santana* or *Cummings* suggests that the illegality of Defendants' actions is not beyond dispute. Rather, a reasonable officer could have concluded that, like in *Santana*, Brenay, Jr., exposed himself to public view.[1] Accordingly, Plaintiffs have not demonstrated a palpable defect in the Court's qualified immunity analysis in the original order.

To the extent Plaintiffs also argue that the Court erred in dismissing the malicious prosecution claim, Plaintiffs do not present any new legal authority or previously unconsidered issues of material fact. Because Plaintiffs has not presented new arguments regarding this claim, they have not shown a basis for reconsideration.

### III.

Accordingly, it is **ORDERED** that Plaintiffs' motion for reconsideration, ECF No. 51, is **DENIED.**

Dated: December 21, 2016                          s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

---

[1] Plaintiffs again argue that "under clearly settled Michigan law the officers knew or should have known that a citizen has a right to resist an illegal arrest in his own home. *People v. Moreno*, 491 Mich. 38 (2012). . . . However, apparently is no longer the law, for if the person refuses to answer questions and starts closing the door and he is within arm's length, then it is apparently okay for an officer to reach inside the house and yank this citizen out of it." Mot. Reconsideration, ECF No. 51, at 4–5. The argument however, has no particular relevance to the earlier opinion. As stated, the Court is not concluding that Defendants' entry into the house was lawful. Rather, the Court is merely holding that the illegality of Defendants' actions was not beyond dispute at the time they occurred, entitling Defendants to qualified immunity. Further, the officers informed Brenay, Jr., that he was under arrest before any entry into the home occurred. In fact, the entry into the home happened only because the officers reasonably perceived the closing screen door as an attempt by Brenay, Jr., to evade the arrest. In typical circumstances, an individual may refuse to answer questions and close the door on an officer. *See Cummings*, 418 F.3d at 685. But, "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *Santana*, 427 U.S. at 43.

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 21, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager